**The STATE ex rel. CLERMONT COUNTY DEPARTMENT OF HUMAN SERVICES, Appellee,**

**v.**

**WALSSON, Appellant.**

[Cite as *State ex rel. Clermont Cty. Dept. of Human Serv. v. Walsson* (1995), 108 Ohio App.3d 125.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA95–02–013.

Decided Dec. 26, 1995.

*Michael J. Finney,* for appellee.

*Peter J. Strasser,* for appellant.

WALSH, Presiding Judge.

Defendant-appellant, Ray Walsson, appeals the judgment entry of the Domestic Relations Division of the Clermont County Court of Common Pleas sentencing him to ninety days in jail for his third offense of contempt for failure to pay child support.

On July 11, 1991, plaintiff-appellee, the Clermont County Department of Human Services, Child Support Enforcement Agency, filed a complaint for child support and reimbursement against appellant, alleging that he was the father of a minor child, Whittney Walsson. The complaint requested that appellant pay child support and reimburse appellee for past public assistance extended to Whittney. On September 27, 1991, after a hearing before a referee of the Domestic Relations Division of the Clermont County Court of Common Pleas ("domestic relations court"), which appellant did not attend, the referee recommended that appellant reimburse appellee for past public assistance paid and pay a minimal amount of child support. The referee's report was approved and adopted by the domestic relations court.

On November 22, 1991, appellee moved to find appellant in contempt for failure to pay child support. Appellant was not found to be in contempt, but his employer was ordered to withhold a portion of his wages for child support and he was again ordered to pay a weekly amount toward the accrued arrearage.

On May 29, 1992, alleging that appellant was more than $2,500 in arrears, appellee again moved to find appellant in contempt for failing to pay child support. On August 7, 1992, after a hearing, a domestic relations court referee found appellant in contempt as a first-time offender for failure to pay child support. The trial court adopted and approved the referee's report.

Meanwhile, on May 28, 1992, Kay Pierce ("Pierce"), maternal grandmother of Whittney Walsson and of a second child, Raymond Walsson, initiated a separate action in the Juvenile Division of the Court of Common Pleas ("juvenile court") to have both children declared dependent and placed in her custody. On June 17, 1992, the juvenile court granted the motion, noting in its entry that the children were on Aid to Dependent Children ("A.D.C.") and that the Child Support

Enforcement Agency had a support order "in place." On June 19, 1992, upon motion, the domestic relations court ordered that appellant's child support payments be sent to the Child Support Enforcement Agency.

On December 17, 1992, appellee moved for the third time to have appellant found in contempt for failure to pay child support, alleging that appellant was $2,346.14 in arrears. Following a hearing, the domestic relations court referee recommended appellant be found in contempt as a second-time offender. Appellant did not appear at his sentencing hearing. A bench warrant was issued for his arrest, and he was apprehended and sentenced to serve sixty days in jail. Appellant failed to report for jail, and a second bench warrant for his arrest was issued. Appellant was again apprehended and was then released by the domestic relations court on his own recognizance.

On December 23, 1993, appellee moved for the fourth time to find appellant in contempt for failure to pay child support, stating that appellant was $6,656.14 in arrears. Appellant moved to dismiss the contempt action, arguing that "[f]rom the date its jurisdiction was invoked relative to the said dependent children, the Juvenile Court had exclusive jurisdiction relative to all matters pertinent to these children including their support." A hearing was held and on June 2, 1994, the referee dismissed appellee's motion for contempt and found that "[a]ll orders issued by Domestic Relations Court on or after June 17, 1992 [the date the children were adjudicated dependent] are void and shall be vacated." The referee further determined that "[o]nce Juvenile Court adjudicated the children as dependent children, Juvenile Court divested the Domestic Relations Court of all jurisdiction over the children. As such, Domestic Relations Court no longer has continuing jurisdiction to enforce the payment of child support."

Appellee objected to the referee's report. After an informal hearing, the domestic relations court reversed and remanded the case to the referee, finding that there was no jurisdictional conflict between the two courts. The domestic relations court found that "[t]he domestic relations court determined issues relating to child support, and the juvenile court determined custody. The domestic relations court made no findings as to custody as that issue was not brought before it, nor did the juvenile court make any modification with regard to child support."

On October 11, 1994, a contempt hearing was held and on December 2, 1994, the referee recommended that appellant be found in contempt as a third-time offender for failure to pay child support. On December 5, 1994, appellant again moved to dismiss for lack of jurisdiction and enclosed a copy of the divorce decree filed in the Domestic Relations Division of the Clermont County Court of Common Pleas on April 10, 1994 in case No. 93–DM–1160, *Kalynn Walsson v. Ray Walsson*. Appellant also filed objections to the referee's report. The

domestic relations court overruled appellant's objections. On February 27, 1995, appellant was sentenced to ninety days in jail. This appeal followed.[1]

In his sole assignment of error, appellant states as follows:

"The domestic relations court erred to the substantial prejudice of defendant-appellant in failing to dismiss contempt proceedings and in failing to terminate ongoing support orders."

In support of his argument, appellant raises three issues. First, appellant argues that once the juvenile court exercises its jurisdiction in a case, it has exclusive original jurisdiction over all subsequent matters involving custody and support in that case. Second, appellant contends that the parties' decree of divorce, which was filed in the domestic relations court and which found that the juvenile court had jurisdiction over "issues of custody, child support, health care and other matters regarding the children," is *res judicata* as to the question of jurisdiction. Finally, appellant argues that the state's pursuit of child support in juvenile court under the neglect case indicates a concession by the state that juvenile court had exclusive jurisdiction. The essence of appellant's argument, however, is that the filing of the dependency action in juvenile court divested the domestic relations court of the jurisdiction to enforce its own child support orders. Appellant's assignment of error is not well taken.

Prior to December 31, 1993, the division of domestic relations of the court of common pleas had "full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." R.C. 3105.011. On December 31, 1993, R.C. 2151.23(A)(11) became effective. R.C. 2151.23(A)(11) amended the code to give the juvenile court exclusive original jurisdiction "[t]o hear and determine a request for an order for the support of any child if the request is not ancillary to an action for divorce, dissolution of marriage, annulment, or legal separation, a criminal or civil action involving an allegation of domestic violence, or an action for support brought under Chapter 3115 of the Revised Code."

We have held that "a court which obtains jurisdiction over and enters orders with regard to the custody and support of children retains continuing and exclusive jurisdiction over such matters." *Harlow v. Stevens* (Aug. 29, 1994), Preble App. No. CA94-03-004, unreported, 1994 WL 462191 citing *Hardesty v. Hardesty* (1984), 16 Ohio App.3d 56, 58, 16 OBR 59, 61-62, 474 N.E.2d 368, 370-371. The action against appellant for child support and reimbursement of A.D.C. benefits began in July 1991, prior to the 1993 statutory amendment and, thus,

---

1. On March 16, 1995, after appellant had filed his notice of appeal, we determined that the case was not ripe for adjudication because there had been no final judgment entry filed. We remanded the case to the trial court to prepare a final appealable judgment entry. That entry was filed on June 6, 1995.

was properly commenced in the domestic relations court. The domestic relations court, under the authority of its continuing, exclusive jurisdiction, has determined issues relating to child support since the initial action.

In June 1992, the juvenile court determined that Whittney and Raymond were dependent. Appellant asserts that this event terminated the jurisdiction of the domestic relations court in this matter. However, appellant cites no legal authority in support of his position, nor have we found any basis for appellant's claim that a domestic relations court must cede all jurisdiction in an ongoing child support matter to a juvenile court merely because the juvenile court has adjudicated a dependency action involving the same children. Moreover, it is quite plain from the record that the juvenile court did not attempt to exercise jurisdiction over the child support issue. To the contrary, on its recommendation to grant custody to Pierce, the juvenile court referee deferred to the domestic relations court in the matter of child support, noting that "[c]hildren are already on A.D.C. Support Enforcement has an order in place." As the trial court determined, "the juvenile court and domestic court in this case are not vying for jurisdiction of the same issue."

Accordingly, for the reasons stated above, we find that the trial court did not err when it enforced its own valid orders concerning child support in contempt proceedings against appellant. The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

KOEHLER and POWELL, JJ., concur.