**COX, Appellant,**

v.

**COX, Appellee.**

[Cite as *Cox v. Cox* (1998), 130 Ohio App.3d 609.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970772.

Decided Dec. 4, 1998.

610

*Robert R. Hastings, Jr.*, for appellant.

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Diane Books*, Assistant Prosecuting Attorney, for Hamilton County Child Support Enforcement Agency.[1]

---

1. The Hamilton County Child Support Enforcement Agency ("CSEA") identifies itself as "Attorney for Defendant–Appellee." The caption in this case, left over from the original divorce action, identifies Laverne Cox as the defendant-appellee. She has not filed a brief with this court. She appeared *pro se* in the trial court but did not oppose David Cox's motion for return of overpayment of child support. While CSEA did oppose Cox's motion, it did not represent Laverne Cox, and its interest in this case is not necessarily the same as hers.

*Per Curiam.*

Plaintiff-appellant, David L. Cox, appeals a decision of the Domestic Relations Division of the Hamilton County Court of Common Pleas overruling his motion for return of an overpayment of child support. David Cox and Laverne Cox were divorced on February 14, 1973. The decree stated that Laverne Cox would have custody of the Coxes' three minor children and that appellant would pay as support $46 per week plus one percent poundage to the bureau of support.

After the parties' divorce, they had a fourth child, David Cox II, born February 7, 1974. Appellant acknowledged paternity and began paying support of twelve dollars per week pursuant to a voluntary agreement with the Hamilton County Welfare Department. Although appellant's payments under that agreement should have been sent to the welfare department, he began sending them to the bureau of support along with the support payment required by the divorce decree.

The domestic relations court's support order terminated by an entry dated January 23, 1989. In April 1990, appellant filed a motion in the domestic relations court for return of child-support overpayments. He later withdrew that motion, apparently because he was pursuing the matter in relation to David II in the Hamilton County Juvenile Court, which had not previously issued any order in the case. In an entry dated March 11, 1992, the juvenile court determined that appellant owed back support of $2,500 for the period from David II's birth until March 1990, when appellant received legal custody of the child. After reviewing all payments including those made through the bureau of support along with the domestic relations order, the court determined that appellant had paid a total of $39,916.49. It held that appellant "owes no additional payments and is due no overpayment for his support obligation for David II through the Juvenile Court." Finally, it stated that "[w]hile there may be an overpayment on the Domestic Relations Court orders, it is not within the jurisdiction of this court to make any orders regarding those amounts."

On June 26, 1991, appellant filed a motion for an audit and for return of overpayment of child support in the domestic relations court. Using figures from an audit prepared by the Hamilton County Child Support Enforcement Agency ("CSEA"), the magistrate found that from February 14, 1974, to May 25, 1988, appellant had paid $36,750 into the support account, plus one percent poundage. He also stated that according to the juvenile court order, appellant should have

---

Consequently, though we do not change the actual caption of the case for record-keeping purposes, we consider CSEA to be the actual appellee.

paid $2,500 as support for David II. The magistrate added these figures to get $39,460.70 as the total that appellant should have paid into the support account.

The magistrate went on to state that the juvenile court's March 1992 entry credited appellant with paying $39,916.49 into the support account, and it specifically ordered the account closed with "ZERO arrearage and ZERO over-payment." The magistrate noted that appellant had not appealed from the juvenile court's entry, and he found the issue of overpayment to be *res judicata*. Nevertheless, he went on to state:

"Even though I find that the matter is *res judicata*, I determine that the CSEA audit * * * is directly on point. CSEA audited only the Domestic Relations portion of the account. It found total overpaid was $2,460.74 ($2,310.81 in support and $149.93 in poundage). But CSEA did not take into consideration that David L. Cox, Sr. had a Juvenile Court order which obligated him to pay $2,500.00 for David II. When this $2,500.00 additional obligation is accounted for, the account of David L. Cox, Sr. is right on target with the [juvenile court entry]. Consequently, I find no evidence that the account is overpaid even if *res judicata* did not apply."

The domestic relations judge overruled appellant's objections and adopted the magistrate's decision. This appeal followed. In his sole assignment of error, appellant states that the trial court erred in overruling his motion for return of overpayment of child support. He argues that the figures from the audit that the magistrate relied upon were incorrect and that the magistrate used an incorrect termination date for the support obligation. We find this assignment of error to be well taken.

Appellant argues that the trial court incorrectly used May 25, 1988, the twenty-first birthday of the youngest child referred to in the domestic relations order, as the termination date for appellant's support obligation. He argues that the support order for each of the three children should have terminated on a prorated basis when each of them reached age eighteen. CSEA argues that the emancipation issue was not raised below and therefore that appellant waived it, but the record shows otherwise.

Appellant's argument has two parts. First, he takes issue with the trial court's finding that the original support order was an in-gross order that appellant was required to pay in full until the youngest child reached the age of emancipation. Matters regarding child support lie within the discretion of the trial court, and a reviewing court will not disturb the trial court's decision absent an abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030. Given the language of the decree, which failed to specify the support obligation as to each child, we cannot conclude that the trial court's finding that

the order was in-gross is so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 5 OBR 481, 481–482, 450 N.E.2d 1140, 1142.

Appellant also contends that the age of emancipation should be considered to be eighteen years, not twenty-one. We agree. At the time of the divorce decree in this case, the age of majority in Ohio was twenty-one years pursuant to R.C. 3109.01 and 3103.03. Effective January 1, 1974, the legislature amended these statutes to change the age of majority to eighteen. *Motley v. Motley* (1995), 102 Ohio App.3d 67, 69, 656 N.E.2d 995, 996; *Benzinger v. Benzinger* (Feb. 7, 1996), Hamilton App. Nos. C–940974 and C–940990, unreported, 1996 WL 47203. The determination of whether a support obligation in a pre–1974 decree was altered by the lowering of the age of majority depends on whether the decree, explicitly or implicitly, enumerated the duration of the obligation. If it did, the lowering of the age of majority did not change that obligation. If it did not, the lowering of the age of majority meant that the support obligation ended when the child or children at issue reached the age of eighteen. *Motley, supra,* at 70, 656 N.E.2d at 995; *Zweifel v. Price* (1985), 24 Ohio App.3d 101, 104, 24 OBR 171, 174, 493 N.E.2d 300, 304; *Benzinger, supra.*

In *Benzinger,* we held that the trial court erred in requiring a father to provide support until his son reached age twenty-one when the divorce decree required him to pay support for his "minor son." We stated:

"Where, as here, the order does not expressly state a period of duration, but employs only the term 'minor son,' nothing in the order itself compels the conclusion that the court did not intend the meaning of the term 'minor' to encompass legislative changes in the age of majority. To the contrary, the proper inference to be drawn is that the support obligation was concomitant with the minority status of the son—a status which * * * is neither fixed nor vested but controlled by the legislature. * * *

"We concur, therefore, with the courts in *Zweifel* and *Motley* that a support order which is silent as to its duration and speaks only to the minority status of the child or children gives rise, in the absence of any countervailing evidence, to an inference that the support obligation was intended by the court to continue only so long as the child maintains his minority status pursuant to the applicable statutes and any subsequent amendments."

Similarly, in the present case, the decree does not expressly state a duration for the order of support, but it does refer to the Coxes' "minor children." Consequently, we find *Benzinger* to be dispositive of the present case. Since no evidence was presented showing a contrary intent, appellant's support obligation terminated when the youngest child referred to in the decree reached age

eighteen. Therefore, we hold that the trial court erred in holding that appellant's support obligation continued beyond that date.

■ Appellant also argues that the trial court erred in relying on the figures in the CSEA audit because they were incorrect. The CSEA supervisor who oversaw the audit testified that because CSEA could not locate records for the years prior to 1976, it relied upon court entries to determine the total amount appellant was required to pay. It used an entry dated February 23, 1977, showing that appellant was in arrears $8,089.43 as a starting point. This was a reasonable course of action given the lack of records, and the trial court would have been within its discretion to accept the figures provided by the audit if they had been correct.

But the record also shows that on September 18, 1980, appellant's counsel filed a motion indicating that shortly after the February 23, 1977, entry was journalized, the parties had agreed that the arrearage was approximately $5,000 and that counsel had inadvertently failed to present an entry to the court to that effect. He moved the court to journalize a *nunc pro tunc* entry correcting that error. Subsequently, on September 25, 1980, the court journalized an entry stating that appellant was in arrears $5,090.02 after a recalculation. The CSEA witness conceded that he did not know of the September 25, 1980, entry and did not take it into account in conducting the audit. Because the unrefuted evidence showed that the CSEA audit initially started with too large a figure, we hold that appellant was entitled to a credit of $2,999.41, the difference between $8,089.43 and $5,090.02.

■ Next, appellant argues that the trial court erred in holding that the issues raised by appellant were *res judicata* due to the juvenile court order. We agree. The juvenile court specifically stated that it was only deciding the matter of support for David II, the child not covered by the divorce decree, and that it was not making any order regarding the domestic relations court support obligation because it had no jurisdiction. The matter of any overpayment on the domestic relations order was not and could not have been litigated in the juvenile court. See *Loetz v. Loetz* (1980), 63 Ohio St.2d 1, 2–3, 17 O.O.3d 1, 1–2, 406 N.E.2d 1093, 1094; *Emerson v. Ryder* (July 21, 1994), Cuyahoga App. No. 65855, unreported. Therefore, appellant's claim for overpayment filed in the domestic relations court did not arise out of the same transaction or occurrence that was the subject matter of the previous action, and the claim was not barred by *res judicata*. *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, syllabus; *Tessler v. Ayer* (Oct. 25, 1995), Hamilton App. Nos. C–940574, 1995 WL 621316, C–940632 and C–940780, unreported.

■ Appellant further argues that the domestic relations court erred in finding that any credit that appellant was entitled to for the domestic relations order was offset by the $2,500 support order from juvenile court. We also agree with this assertion. The juvenile court determined that appellant owed $2,500 in support from the time of David II's birth until appellant received custody of him. However, the juvenile court went on to hold that appellant had paid that obligation and that not only was there no overpayment, there was also no arrearage. The juvenile court had exclusive jurisdiction to decide the issue of support for David II and it specifically held that there was "ZERO arrearage" as to that obligation. R.C. 2151.23(A)(11); *State ex rel. Clermont Cty. Dept. of Human Services v. Walsson* (1995), 108 Ohio App.3d 125, 128, 670 N.E.2d 287, 289; *Hardesty v. Hardesty* (1984), 16 Ohio App.3d 56, 57–58, 16 OBR 59, 60–61, 474 N.E.2d 368, 370–371. The juvenile court entry, which was not appealed, is a valid, final judgment on the merits regarding the matter of support for David II. Consequently, that issue is *res judicata*. *Grava, supra,* at syllabus; *Tessler, supra.* While the domestic relations court had jurisdiction over the issue of support for the three children enumerated in the divorce decree, *Loetz; Emerson, supra,* it did not have authority to go behind the juvenile court order and contradict that court's ruling on a matter over which it had exclusive jurisdiction. Yet that is precisely what the domestic relations court did when it found that appellant still owed $2,500 support for David II, even though the juvenile court order specifically stated that no arrearage existed. Consequently, we hold that the domestic relations court erred in holding that any overpayment on the domestic relations order was offset by the any amount owed on the juvenile court order.

■ CSEA argues that all payments made on behalf of David II were not pursuant to any court order, but were instead made as part of a voluntary agreement with the welfare department. Therefore, it argues, those payments should be deemed a gift under R.C. 2301.36(A). The trial court, it its discretion, properly rejected this argument. The statute only creates a rebuttable presumption of a gift, which the payor can overcome with evidence that the alleged voluntary payments were made to discharge another obligation. *Mihna v. Mihna* (1989), 48 Ohio App.3d 303, 304–305, 549 N.E.2d 558, 560; *Bean v. Bean* (Mar. 29, 1991), Lake App. No. 90–L–14–042, unreported, 1991 WL 45694. Here, the unrefuted evidence showed that the overpayments were made to discharge appellant's obligation under R.C. 3103.03 to support David II, despite the lack of a formal court order. Consequently, we hold that appellant met his burden to show that they were not gifts. Further, this court has held that in some situations equitable considerations should permit a credit for voluntary expenditures made on behalf of a child. *Wiley v. Wiley* (July 26, 1989), Hamilton App.

Nos. C–880507 and C–880515, unreported, 1989 WL 82310. We find this to be such a case.

In sum, we hold that the trial court abused its discretion in denying appellant's motion for overpayment of child support. We sustain appellant's assignment of error, and we remand the case for calculation of the amount of overpayment in accordance with this decision.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., GORMAN and MARIANNA BROWN BETTMAN, JJ., concur.